## Case No. 113a.
### AIREY v. The ANN C. PRATT.
[10 N. Y. Leg. Obs. 199.]

District Court, D. Maine.   July Term, 1852.[1]

SEAMEN—WAGES—FORFEITURE.

[A vessel, in poor repair, was blown off by stress of weather from an island on which the master was left; and the mate, on assuming command, bore away to a distant island with the assurance of favorable wind and weather, instead of returning to rejoin the master, which the condition of the vessel and the state of the weather rendered practicable, though perhaps imprudent. *Held*, that willful misconduct and a fraudulent motive cannot be imputed to the mate so as to forfeit his wages.]

[In admiralty. Libel by Richard R. Airey against the brig Ann C. Pratt and Leonard B. Pratt, master and claimant, for seaman's wages. Decree for libelant. Affirmed on subsequent appeal to the circuit court. Airey v. The Ann C. Pratt, Case No. 114.]

The libel of Airey, for his wages, was argued and heard at the same time and on the same evidence with that on the bottomry bond. But, in considering the mate's claim for wages, his own deposition, which was admitted in the case of bottomry, (The Forti-

tude, Case No. 4,953,) must be excluded. The exclusion, however, of this part of the evidence does not materially change the aspect of the case. The objection to the mate's libel is that he forfeited his wages by misconduct, and the facts relied upon to show his alleged misconduct sufficiently appear from the testimony of the other witnesses. The principal cause of forfeiture insisted upon is the alleged misconduct of Airey at St. Michael. When blown off by stress of weather from the island, it is said that it was his duty to bring the vessel back, and restore the command to the master, and that, the condition of the vessel and the state of the weather being such as to render this practicable, if not clearly the safest and most prudent course to be taken, his determination to bear away for the distant island of St. Thomas can reasonably be accounted for on no other supposition than a determination to leave the master, and assume for the remainder of the voyage the command himself. If such was the fact, it was a gross violation of duty, and the lightest penalty with which it ought to be visited would be a forfeiture of his wages.

Two experienced shipmasters were examined as experts on this question; and with all the facts explained to them with respect to the condition of the ship and the state of the weather, they expressed a clear opinion that the vessel might with safety have been carried back to the island, and that a judicious and prudent navigator would have done this rather than bear away for a distant port, as that of St. Thomas. Their opinion is undoubtedly entitled to much consideration; but it cannot, even admitting its correctness, be held to be decisive of the present case.

The question here is not precisely whether this on the whole was the most advisable and prudent course to be taken, but whether it was so clearly and manifestly so, that no man of ordinary judgment could have mistaken it. Airey, like every other man, is entitled to the ordinary presumption in his favor, that he has acted fairly and honestly, until this is overcome by satisfactory evidence. But Airey, also, like every other man who offers himself for a particular service, engages and pledges himself both for his competency and his fidelity. A mate may be degraded and put before the mast as well for want of skill as want of faithfulness. And we are bound to suppose that he had a reasonable degree of skill and experience in seamanship and navigation to enable him to take the command and manage the vessel on the happening of any casualty which separated the master from the ship. This is one of the contingencies that is contemplated by his contract. Up to this time the conduct of the mate seems to have been entirely unexceptionable, and we are not justified in imputing to him willful misconduct on doubtful and inconclusive evidence. By a casualty, for which no blame attached to him, he was left in the command of the vessel, and was obliged to

act under trying circumstances, and such as involved considerable danger. Taking all the evidence together, it appears to me that there was but one of two courses which could with propriety be taken: Either to return to the island and rejoin the master, or bear away for a West India port. Had he attempted to return, and the weather continued as it had been for the preceding fortnight or three weeks, the vessel and the lives of all on board would have been exposed to no inconsiderable danger. The brig had, during the whole voyage, leaked badly, and she had shown herself unfit to contend with tempestuous weather. By steering for St. Thomas, it was known that in a short time he would take the trade winds, when the wind would be in their favor, with an assurance of favorable weather. They might then with confidence calculate on saving themselves and the ship. We have the opinion of two respectable and experienced shipmasters, that under all the circumstances, the proper course would have been to return to the island. Airey chose the other. If it be admitted that the opinion of the shipmasters is the most probable, is the case so clear as to leave no room for an honest difference of opinion? So clear that we are driven to impute the conduct of the mate to dishonest and fraudulent motives? I think not. Granting that it might have been more judicious to have attempted to return to the island, the determination of Airey to proceed to St. Thomas at the worst was but an error of judgment, and such an error as it would be very harsh to ascribe to a fraudulent and dishonest purpose.

In procuring the repairs to be done at St. Thomas, I see nothing in the evidence that gives serious countenance to the charge of fraud. The expense was probably somewhat more than the same labor and materials would have cost in her home port, perhaps something more than would have been the cost, if the owner had been present to superintend the repairs. But this is, I presume, not unfrequently the case when vessels are repaired under such circumstances. On the whole, I find nothing in the mate's conduct which will justify the court in refusing to him his wages; but they are allowed on the contract price, and nothing can be given in this case extra for his service as master.